## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| Portsmouth Network Corporation<br><br>                    Plaintiff,<br><br>        v.<br><br>Cisco Systems, Inc.<br><br>                    Defendant. | Civil Action No. 2:23cv441<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Portsmouth Network Corporation ("PNC" or "Plaintiff"), by its attorneys, demands a trial by jury on all issues so triable, and for its complaint against Defendant Cisco Systems, Inc. ("Cisco" or "Defendant") alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement under the patent laws of the United States, Title 35, United States Code, Section 271, *et seq.*, involving the following United States Patents, collectively, "Asserted Patents," and seeking damages and injunctive relief as provided in 35 U.S.C. §§ 281 and 283–285.

| |
|---|
| U.S. Patent No. 6,917,986 (Exhibit 1, "'986 patent") |
| U.S. Patent No. 7,035,279 (Exhibit 2, "'279 patent") |
| U.S. Patent No. 7,596,088 (Exhibit 3, "'088 patent") |
| U.S. Patent No. 8,014,394 (Exhibit 4, "'394 patent") |

## THE PARTIES

2.      Plaintiff is a Delaware Corporation.  Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 35 Village Rd., Suite 100, Middleton, Massachusetts 01949.  Plaintiff is the owner by assignment of

the Asserted Patents.

3.     Defendant Cisco Systems, Inc. ("Cisco" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 170 West Tasman Dr., San Jose, California 95134, and has regular and established places of business throughout this District, including at least at 2250 East President George Bush Turnpike, Richardson, Texas 75082 and 2260 Chelsea Blvd. Allen, Texas 75013.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     On information and belief, jurisdiction and venue for this action are proper in this Judicial District.

6.     Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and the Texas Long Arm Statute. Tex. Civ. Prac. & Rem. Code §§ 17.041, et seq.

7.     This Court has personal jurisdiction over Defendant because Defendant, directly or through intermediaries, has committed acts within this District giving rise to this action and/or has established minimum contacts with this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. In particular, Defendant (i) has a regular and established place of business in the State of Texas and this District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this District; (iii) has done and is doing substantial business in the State of Texas and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including its one or more acts of infringement in the State of

Texas and this District; (iv) has derived and derives substantial revenues from infringing acts occurring in the State of Texas and this District; (v) maintains continuous and systematic contacts in the State of Texas and this District; and/or (vi) places products alleged to be infringing in this Complaint in the stream of commerce with awareness that those products are sold, used, and offered for sale in the State of Texas and this District.

8.      For example, on information and belief, Defendant maintains regular and established places of business in this District at 2250 East President George Bush Turnpike, Richardson, Texas 75082 and at 2260 Chelsea Blvd., Allen, Texas 75013 and has committed acts of infringement in this District.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) at least because Defendant has committed acts of infringement and is subject to personal jurisdiction in this District, including by way of maintain regular and established places of business at 2250 East President George Bush Turnpike, Richardson, Texas 75082 and at 2260 Chelsea Blvd., Allen, Texas 75013. Defendant, through its own acts and/or through the acts of others acting as its agent, representative, or alter ego, makes, uses, sells, offers to sell, and/or imports infringing products within this District, has a continuing presence within this Judicial District, and has the requisite minimum contacts with this District such that venue is proper.

## CORRIGENT-SYSTEMS AND ITS
## PIONEERING TELECOMMUNICATIONS TECHNOLOGY

10.     Corrigent-Systems Ltd. (a.k.a. Orckit Communications Ltd.) ("Corrigent-Systems" or "Orckit") was founded in 1990 by Izhak Tamir, and went public and was listed on the Nasdaq Stock Exchange in 1996.

11.     Corrigent-Systems was a pioneer in the telecommunications field, with sales of its telecommunications products exceeding $500M to various global telecommunications providers

such as Deutche Telekom (Germany) and Kokusai Denshin Denwa International ("KDDI") (Japan).  Between 1990 and 2000, Corrigent-Systems became the market leader in asymmetric digital subscriber line (ADSL) technology.

12.    In 2000, Corrigent-Systems started to develop new telecommunications products in the area of Ethernet switching and routing to optimize the transmission of voice and data over Internet Protocol (IP) telecommunications networks.  At the time, the field of Ethernet switching and routing suffered many drawbacks.  Early Ethernet technology used for sharing data in offices and enterprises was not easily suited to serve as the backbone for telecommunications service providers.  For example, early Ethernet technology, used to connect a few computers in an office, could not meet the reliability and resiliency requirements of service providers, where a single connection may serve thousands of subscribers using different services in parallel.  Nor could early Ethernet technology support real-time streaming, guarantee a minimum or even consistent delay, avoid back-up delay if a failure in the network occurs (e.g., a cable is damaged), or support the broadcasting of high-data-rate data to multiple end points required by, for example, television service providers.

13.    Corrigent-Systems was a pioneer in overcoming these technology challenges. Between 2000 and 2010, Corrigent-Systems invested approximately $200M toward research and development of its new Ethernet switching and routing products.  Corrigent-Systems identified and solved several obstacles in the field, and, as a result, was awarded hundreds of patents including the Asserted Patents, spanning over 70 patent families.  Corrigent-Systems' product line revolutionized the telecommunications industry.  For example, KDDI in Japan deployed a country-wide network of more than 2,000 Corrigent-Systems Ethernet switch products as early as 2005, a time when Corrigent-Systems' competitors lagged significantly behind Corrigent-Systems and its

innovative products and solutions.

14.    The industry recognized Corrigent-Systems' innovation.  In a research study by Bart Stuck & Michael Weingarten published in IEEE, Corrigent-Systems was ranked in the top twenty innovative companies among hundreds of public companies.  Ex. 18, Stuck, B. and Weingarten, M., "How Venture Capital Thwarts Innovation," IEEE Spectrum (April 2005).

15.    Plaintiff obtained all rights in the asserted patents.

## THE ASSERTED PATENTS

### U.S. Patent No. 6,917,986

16.    Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 6,917,986 ("'986 patent") entitled "Fast failure protection using redundant network edge ports," including the right to sue and recover for infringement thereof.  A copy of the '986 patent is attached hereto as Exhibit 1, which was duly and legally issued on July 12, 2005, naming Gal Mor and Shmuel Ilan as the inventors.

17.    The '986 patent has 24 claims: 4 independent claims and 20 dependent claims.

18.    The '986 patent presented novel and unconventional devices and methods for "providing reliable, fault-resistant network access." Ex. 1, '986 patent at 1:7–8; *id*. at Abstract. The inventions of the '986 patent, for example, "provide a method for fast changeover between redundant network links that can be implemented by modifying a single MAC bridge, without the need for reprogramming or replacing other items of equipment in the network." *Id*. at 4:33–36. The MAC bridge can accomplish the fast changeover by "send[ing] dummy frames through the new active link to the access switches." *Id*. at 4:20–21.  One embodiment of the inventions of the '986 patent is shown in FIG. 3, "a flow chart that schematically illustrates a method for reconfiguring switches in a computer network following a failure in the network," reproduced

below. *Id.* at 7:1-4.



*Id*. at Fig. 3; *see also id*. at 9:11–10:6.

19.    The claims of the '986 patent, including claim 12 (reproduced below), recite at least

these inventive concepts of the '986 patent.

12. A method for network communication, comprising:

coupling a first bridge in a network to a second bridge located downstream of the
first bridge, by connecting at least first and second redundant links to respective
first and second ports of the first bridge so as to communicate with the second
bridge;

placing the first port in an active state, while placing the second port in a blocking
state;

conveying communication traffic over the first link while the first port is in the
active state, thereby causing the bridges to build respective databases for use in
forwarding the traffic;

responsive to a failure associated with the first link, placing the second port in the
active state and the first port in the blocking state; and

sending dummy traffic from the first bridge over the second link downstream to
the second bridge, so as to cause the second bridge to modify its database
responsive to the second port being in the active state.

*Id*. at claim 12.

20.     The subject matter described and claimed in the '986 patent, including the subject matter of claim 12, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '986 patent.

21.     On information and belief, Defendant had knowledge of the '986 patent, including at least as of March 2017 when Orckit IP, LLC ("Orckit IP")—a prior owner of the Asserted Patents—initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of this Complaint.

**U.S. Patent No. 7,035,279**

22.     Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 7,035,279 ("'279 patent") entitled "Flow allocation in a ring topology," including the right to sue and recover for infringement thereof.  A copy of the '279 patent is attached as Exhibit 2, which was duly and legally issued on April 25, 2006, naming Leon Bruckman as the inventor.

23.     The '279 patent has 18 claims: 2 independent claims and 16 dependent claims.

24.     The '279 patent presented novel and unconventional systems and methods concerning communications within a network, and specifically "for efficient allocation of resources for data flow in such networks." Ex. 2, '279 patent at 1:7–9.  The inventions of the '279 patent, for example, provide "a method of data flow allocation that makes optimal use of resources that are available on different network links." *Id*. at 2:10–12.  One embodiment of the inventions of the '279 patent is shown in FIG. 3, "a flow chart that schematically illustrates a method for assigning network resources to network nodes," reproduced below. *Id*. at 4:9–12.



*Id.* at Fig. 3; *see also id.* at 5:59–6:38.

25.    The claims of the '279 patent, including claim 1, recite at least these inventive

concepts of the '279 patent.

1. In a communication network that includes a plurality of nodes interconnected by links, the nodes including at least first and second nodes, a method for routing a data flow, comprising:

allocating a respective number of quanta of one or more resources in the network to each of the nodes;

receiving a request at the first node to use a portion of the resources so as to carry the data flow between the first and second nodes over one of a plurality of paths therebetween, each such path comprising a respective sequence of the links; and

in response to the request:

if the resources already allocated to the first node on one of the paths are sufficient, directing the data flow from the first node to the second node over the one of the paths without requesting additional resources; and

if the resources already allocated to the first node are insufficient, performing the following steps:

requesting an increase in an allocation to the first node of the requested resources;

determining, for the links comprised by each of the paths, respective levels of use of the requested resources due to communications in progress over the network;

selecting which of the paths is to carry the data flow responsive to the determined levels of use of the requested resources on the links comprised in each of the paths; and

increasing the allocation of the resources to the first node on the selected path by a predetermined quantum.

*Id*. at claim 1.

26.      The subject matter described and claimed in the '279 patent, including the subject matter of claim 1, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '279 patent.

27.      On information and belief, Defendant had knowledge of the '279 patent, including at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of this Complaint.

**U.S. Patent No. 7,596,088**

28.      Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 7,596,088 ("'088 patent") entitled "Route selection with bandwidth sharing optimization over rings," including the right to sue and recover for infringement thereof.  A copy of the '088 patent is attached as Exhibit 3, which was duly and legally issued on September 29, 2009, naming Gideon Agmon and Yossi Barsheshet as the inventors.

29.      The '088 patent has 20 claims: 4 independent claims and 16 dependent claims.

30.      The '088 patent presented novel and unconventional systems and methods "for selecting routes for communication connections that share bandwidth allocations in ring

configurations." Ex. 3, '088 patent at 1:7–9. The inventions of the '088 patent, for example,

provide "improved methods and systems for establishing a connection through a communication

network, taking into account the ability to share bandwidth between the new connection and

existing connections." *Id*. at 2:13–17. One embodiment of the inventions of the '088 patent is

shown in FIG. 4, "a flow chart that schematically illustrates a method for establishing a

connection," reproduced below. *Id*. at 4:22–24.



*Id*. at Fig. 4; *see also id*. at 6:62–8:40.

31.    The claims of the '088 patent, including claim 1 (reproduced below), recite at least

these inventive concepts of the '088 patent.

1. A method for establishing a connection through a communication network that
includes multiple segments, comprising:

identifying two or more candidate routes for a new connection having a requested
bandwidth to be established through the network;

providing a sharing definition specifying one or more other connections, which
have respective bandwidths and which are permitted to share a bandwidth
allocation with the new connection, such that a total bandwidth allocated jointly to
the new connection and to the other connections in any given segment is equal to a
maximum of the requested bandwidth and of the bandwidths of the other

connections in the given segment;

for each of the two or more candidate routes, calculating a cumulative additional bandwidth reservation to be allocated to the new connection in the segments along the candidate route, responsively to the sharing definition;

selecting a preferred route having a minimum value of the cumulative additional bandwidth reservation out of the two or more candidate routes; and

establishing the new connection using the preferred route.

*Id*. at claim 1.

32.    The subject matter described and claimed in the '088 patent, including the subject matter of claim 1, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '088 patent.

33.    On information and belief, Defendant had knowledge of the '088 patent, including at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of this Complaint.

**U.S. Patent No. 8,014,394**

34.    Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 8,014,394 ("'394 patent") entitled "High-speed processing of multicast content requests," including the right to sue and recover for infringement thereof.  A copy of the '394 patent is attached as Exhibit 4, which was duly and legally issued on September 6, 2011, naming Rafi Ram and Ronen Solomon as the inventors.

35.    The '394 patent has 18 claims: 4 independent claims and 14 dependent claims.

36.    The '394 patent presented novel and unconventional systems and methods concerning communication networks, including "for delivering multicast traffic over

11

communication networks." *See* Ex. 4, '394 patent at 1:7–8.  The inventions of the '394 patent, for

example, "are particularly effective in adapting rapidly to requests to change the multicast

forwarding configuration."  *Id*. at 4:61–62.  One embodiment of the inventions of the '394 patent

is shown in FIG. 2, "a flow chart that schematically illustrates a method for processing multicast

content requests in a network element," reproduced below.  *Id*. at 4:29–32.



*Id*. at FIG. 2; *see also id*. at 7:10–10:14.

37.    The claims of the '394 patent, including claim 1 (reproduced below), recite at least

these inventive concepts of the '394 patent.

1. A method for communication, comprising:

operating a network element, wherein the network element further comprises
multiple interconnected processing units and multiple ports, wherein each
processing unit is assigned to a different subset of the multiple ports of the network
element, and wherein each processing unit contains a processor for processing

packets communicated over the different subset of the multiple ports to which the processing unit is assigned;

storing in each processing unit a respective list, each list indicating all of one or more multicast packet streams that are permitted for forwarding by the network element, and further indicating which of the one or more ports each multicast packet stream is permitted to be forwarded to;

receiving from a client a request relating to reception of a given multicast packet stream;

distributing the request among the multiple processing units within the network element, and updating the respective list in each processing unit responsively to the request; and

selectively forwarding multicast packets associated with the given multicast packet stream by the processing units in accordance with the respective updated lists,

wherein operating the network element comprises aggregating two or more of the ports to form a high-capacity port, and

wherein aggregating the ports comprises setting an upper limit on a number of the multicast packet streams that are permitted for forwarding over the high-capacity port, wherein the request indicates that the given multicast packet stream is to be forwarded over the high-capacity port, and wherein updating the list comprises modifying the list to indicate that the given multicast packet stream is permitted for forwarding over the high-capacity port only when the number of the multicast packet streams that are permitted for forwarding over the high-capacity port, including the given multicast packet stream, does not exceed the upper limit.

*Id*. at claim 1.

38.    The subject matter described and claimed in the '394 patent, including the subject matter of claim 1 of the '394 patent, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of '394 patent.

39.    On information and belief, Defendant had knowledge of the '394 patent, including at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of this Complaint.

## **BACKGROUND OF DEFENDANT'S INFRINGING CONDUCT**

40.    Defendant Cisco Systems Inc. is a networking hardware company that makes, uses, sells, offers for sale in the United States, and/or imports into the United States, or has otherwise made, used, sold, offered for sale in the United States, and/or imported in the United States, routers and switches that infringe the Asserted Patents.

41.    Defendant's products that infringe the Asserted Patents (collectively, "Accused Products") include the following:

| Accused Products | Asserted Patents |
|---|---|
| Cisco ASR 9000 Series Routers | '986 patent, '394 patent |
| Cisco Catalyst 9000 Switches | '279 patent |
| Cisco ASR 920 Series Routers | '088 patent |

The above-listed Accused Products are non-limiting.  Additional products may infringe the Asserted Patents, and the above-listed Accused Products may infringe additional patents or other Asserted Patents.

42.    Defendant infringes and continues to infringe the Asserted Patents by making, using, selling, offering to sell, and/or importing, without license or authority, the Accused Products as alleged herein.

43.    Comparison of claims of the Asserted Patents to the Accused Products are attached as Exhibit 5 ('986 patent), Exhibit 6 ('279 patent), Exhibit 7 ('088 patent), and Exhibit 8 ('394 patent), and are incorporated herein by reference.

44.    Defendant markets, advertises, offers for sale, and/or otherwise promotes the Accused Products and, on information and belief, does so to induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, and/or offer to sell their Accused Products.  For example, Defendant advertises, offers for sale, and/or otherwise promotes the

14

Accused Products on its website.  Defendant further publishes and distributes data sheets, manuals, and guides for the Accused Products.  *See, e.g.*, Ex. 9, "Multicast Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 6.4.x" (available at https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k-r6-4/multicast/configuration/guide/b-multicast-cg-asr9000-64x.html); Ex. 10, "Cisco ASR 9000 Series Aggregation Services Router L2VPN and Ethernet Services Configuration Guide, Release 6.1.x" (available at https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k_r6-1/lxvpn/configuration/guide/b-l2vpn-cg-asr9k-61x.pdf); Ex. 11, "MPLS Traffic Engineering Path Calculation and Setup Configuration Guide, Cisco IOS XE Release 3S (Cisco ASR 920 Series)" (available at https://www.cisco.com/c/en/us/td/docs/routers/asr920/configuration/guide/mpls/mp-te-path-setup-xe-3s-asr920-book/mp-bundle-interface.html); Ex. 12, "Cisco Catalyst 9000 Switching Platforms: QoS and Queuing" (available at https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9000/white-paper-c11-742388.html).  Therein, Defendant describes and touts the use of the subject matter claimed in the Asserted Patents, as described and alleged below.

## BACKGROUND OF DEFENDANT'S KNOWLEDGE OF THE INVENTIONS DESCRIBED AND CLAIMED IN THE ASSERTED PATENTS

45.    On information and belief, Defendant has had knowledge of the Asserted Patents and the inventions described and claimed therein since at least around March 2017, when Orckit IP—a prior owner of the Asserted Patents—initiated discussions with Defendant about the Asserted Patents and the Accused Products.

46.    On March 20, 2017, Orckit IP sent letter to Defendant concerning its "Patent Portfolio." Ex. 13, 2017-03-20, Hallaj Ltr.  In that letter, Orckit IP notified Defendant that it "owns a patent portfolio related to certain communications technologies developed by Orckit

Communications Ltd. and Corrigent Systems Ltd. (f/k/a Orckit-Corrigent Ltd.). Orckit IP's patent portfolio includes over 100 patents and pending patent applications. One or more of these patents and patent applications may be of interest to Cisco and require your company's attention." *Id*. Orckit IP further identified several "Cisco switches and routers," including the Cisco Blade Switches and Cisco's Catalyst Series Switches, which are accused of infringing the Asserted Patents in this case. *Id*. Orckit IP concluded: "Accordingly, Cisco may be interested in obtaining a license to (or acquiring) the '983 Patent and/or other patent assets from Orckit IP's patent portfolio." *Id*.

47.    On April 10, 2017, Defendant responded by letter and requested additional information. Ex. 14, 2017-04-10, Showalter Ltr.

48.    On July 11, 2018, Orckit IP sent a second notice letter to Defendant, again concerning its "Patent Portfolio." Ex. 15, 2018-07-11, Hallaj Ltr. Orckit IP again notified Defendant that Orckit IP's patent portfolio relates to Defendant's switch and router products. *Id*. Orckit IP concluded: "Accordingly, Cisco may be interested in obtaining a license to (or acquiring) the '821 Patent, the '928 Patent, and/or other patent assets from Orckit IP's patent portfolio (in addition to the '983 Patent, discussed above)." *Id*.

49.    On July 25, 2018, Defendant responded by letter and requested additional information. Ex. 16, 2018-07-25, Walters Ltr.

50.    On November 20, 2018, Orckit IP identified additional patents within its patent portfolio, including the asserted '986 patent. Ex. 17, 2018-11-20 Wan Email. Orckit IP offered to send Defendant exemplary "evidence of use charts" relating to any of the patents, including the asserted '986 patent. *Id*.

51.    Defendant has also had knowledge of the Asserted Patents and the inventions

described and claimed therein since at least as of the filing of this Complaint.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,917,986

52.     Plaintiff incorporates by reference the allegations contained in paragraphs 1–51.

53.     Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '986 patent in violation of 35 U.S.C. § 271(a), including claim 12.  A comparison of claim 12 of the '986 patent to the Accused Products is attached as Exhibit 5, which is incorporated herein by reference.

54.     On information and belief, with knowledge of the '986 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the '986 patent, including claim 12, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '986 patent, including claim 12, with the intent to encourage those customers and/or end-users to infringe the '986 patent.

55.     By way of example, on information and belief, Defendant actively induces infringement of the '986 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant's products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant's products, including at least the Accused Products, in a manner that infringes at least one claim of the '986 patent, including claim 12.  For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website.  Defendant further actively markets, advertises, offers for sale,

and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products.  Therein, Defendant describes and touts the use of the subject matter claimed in the '986 patent.

56.    On information and belief, with knowledge of the '986 patent, Defendant also contributes to the infringement of one or more claims of the '986 patent in violation of 35 U.S.C. § 271(c), including claim 12, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is evidenced by, among other things, the design, configuration, and functionality of Defendant's Accused Products, which are especially made or especially adapted for use in an infringement of the '986 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant's informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '986 patent.

57.    As a result of Defendant's inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant's products, including the Accused Products, in ways that directly infringe one or more claims of the '986 patent, including claim 12.  On information and belief, Defendant had actual knowledge of its customers' and/or end users' direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant's products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its

patent portfolio, including the Asserted Patents, and no later than the filing of this Complaint.

58.     On information and belief, with knowledge of the '986 patent, Defendant has willfully, deliberately, and intentionally infringed the '986 patent, and continues to willfully, deliberately, and intentionally infringe the '986 patent.  On information and belief, Defendant had actual knowledge of the '986 patent and Defendant's infringement of the '986 patent as set forth above.  On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the '986 patent as set forth above.  On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the '986 patent at least because Plaintiff notified Defendant of the '986 patent and its infringement of the '986 patent as set forth above.

59.     On information and belief, Defendant will continue to infringe the '986 patent unless and until it is enjoined by this Court.  Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '986 patent, Plaintiff will continue to suffer irreparable harm.

60.     Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the '986 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

61.     Plaintiff has complied with 35 U.S.C. § 287 with respect to the '986 patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,035,279

62.     Plaintiff incorporates by reference the allegations contained in paragraphs 1–61.

63.     Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of

equivalents, one or more claims of the '279 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the '279 patent to the Accused Products is attached as Exhibit 6, which is incorporated herein by reference.

64.    On information and belief, with knowledge of the '279 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the '279 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '279 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the '279 patent.

65.    By way of example, on information and belief, Defendant actively induces infringement of the '279 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant's products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant's products, including at least the Accused Products, in a manner that infringes at least one claim of the '279 patent, including claim 1. For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website. Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendant describes and touts the use of the subject matter claimed in the '279 patent.

66.    On information and belief, with knowledge of the '279 patent, Defendant also

contributes to the infringement of one or more claims of the '279 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.   This is evidenced by, among other things, the design, configuration, and functionality of Defendant's Accused Products, which are especially made or especially adapted for use in an infringement of the '279 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant's informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '279 patent.

67.    As a result of Defendant's inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant's products, including the Accused Products, in ways that directly infringe one or more claims of the '279 patent, including claim 1.  On information and belief, Defendant had actual knowledge of its customers' and/or end users' direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant's products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and no later than the filing of this Complaint.

68.    On information and belief, with knowledge of the '279 patent, Defendant has willfully, deliberately, and intentionally infringed the '279 patent, and continues to willfully, deliberately, and intentionally infringe the '279 patent.  On information and belief, Defendant had

actual knowledge of the '279 patent and Defendant's infringement of the '279 patent as set forth above.  On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the '279 patent as set forth above.  On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the '279 patent at least because Plaintiff notified Defendant of the '279 patent and its infringement of the '279 patent as set forth above.

69.     On information and belief, Defendant will continue to infringe the '279 patent unless and until it is enjoined by this Court.  Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '279 patent, Plaintiff will continue to suffer irreparable harm.

70.     Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the '279 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

71.     Plaintiff has complied with 35 U.S.C. § 287 with respect to the '279 patent.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,596,088**

72.     Plaintiff incorporates by reference the allegations contained in paragraphs 1–71.

73.     Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '088 patent in violation of 35 U.S.C. § 271(a), including claim 1.  A comparison of claim 1 of the '088 patent to the Accused Products is attached as Exhibit 7, which is incorporated herein by reference.

74.     On information and belief, with knowledge of the '088 patent, Defendant has

actively induced and continues to induce the direct infringement of one or more claims of the '088 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '088 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the '088 patent.

75.    By way of example, on information and belief, Defendant actively induces infringement of the '088 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant's products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant's products, including at least the Accused Products, in a manner that infringes at least one claim of the '088 patent, including claim 1.  For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website.  Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products.  Therein, Defendant describes and touts the use of the subject matter claimed in the '088 patent.

76.    On information and belief, with knowledge of the '088 patent, Defendant also contributes to the infringement of one or more claims of the '088 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an

infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is evidenced by, among other things, the design, configuration, and functionality of Defendant's Accused Products, which are especially made or especially adapted for use in an infringement of the '088 patent when used for their normal and intended purpose.  This is also evidenced by, among other things, Defendant's informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '088 patent.

77.    As a result of Defendant's inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant's products, including the Accused Products, in ways that directly infringe one or more claims of the '088 patent, including claim 1.  On information and belief, Defendant had actual knowledge of its customers' and/or end users' direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant's products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and no later than the filing of this Complaint.

78.    On information and belief, with knowledge of the '088 patent, Defendant has willfully, deliberately, and intentionally infringed the '088 patent, and continues to willfully, deliberately, and intentionally infringe the '088 patent.  On information and belief, Defendant had actual knowledge of the '088 patent and Defendant's infringement of the '088 patent as set forth above.  On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the '088 patent as set forth above.  On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the '088 patent at least because

Plaintiff notified Defendant of the '088 patent and its infringement of the '088 patent as set forth above.

79.     On information and belief, Defendant will continue to infringe the '088 patent unless and until it is enjoined by this Court.  Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '088 patent, Plaintiff will continue to suffer irreparable harm.

80.     Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the '088 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

81.     Plaintiff has complied with 35 U.S.C. § 287 with respect to the '088 patent.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,014,394

82.     Plaintiff incorporates by reference the allegations contained in paragraphs 1–81.

83.     Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '394 patent in violation of 35 U.S.C. § 271(a), including claim 1.  A comparison of claim 1 of the '394 patent to the Accused Products is attached as Exhibit 8, which is incorporated herein by reference.

84.     On information and belief, with knowledge of the '394 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the '394 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly

infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '394 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the '394 patent.

85.     By way of example, on information and belief, Defendant actively induces infringement of the '394 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant's products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant's products, including at least the Accused Products, in a manner that infringes at least one claim of the '394 patent, including claim 1.  For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website.  Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products.  Therein, Defendant describes and touts the use of the subject matter claimed in the '394 patent.

86.     On information and belief, with knowledge of the '394 patent, Defendant also contributes to the infringement of one or more claims of the '394 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is evidenced by, among other things, the design, configuration, and functionality of Defendant's Accused Products, which are especially made or especially adapted for use in an infringement of the '394 patent when used for their normal and intended purpose.

This is also evidenced by, among other things, Defendant's informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '394 patent.

87.     As a result of Defendant's inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant's products, including the Accused Products, in ways that directly infringe one or more claims of the '394 patent, including claim 1.  On information and belief, Defendant had actual knowledge of its customers' and/or end users' direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant's products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and no later than the filing of this Complaint.

88.     On information and belief, with knowledge of the '394 patent, Defendant has willfully, deliberately, and intentionally infringed the '394 patent, and continues to willfully, deliberately, and intentionally infringe the '394 patent.  On information and belief, Defendant had actual knowledge of the '394 patent and Defendant's infringement of the '394 patent as set forth above.  On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the '394 patent as set forth above.  On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the '394 patent at least because Plaintiff notified Defendant of the '394 patent and its infringement of the '394 patent as set forth above.

89.     On information and belief, Defendant will continue to infringe the '394 patent unless and until it is enjoined by this Court.  Defendant, by way of its infringing activities, has

caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '394 patent, Plaintiff will continue to suffer irreparable harm.

90.    Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the '394 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

91.    Plaintiff has complied with 35 U.S.C. § 287 with respect to the '394 patent.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment for Plaintiff and against Defendant and enter the following relief:

A.    A judgment that Defendant infringes the following, Asserted Patents:

| |
|---|
| U.S. Patent No. 6,917,986 |
| U.S. Patent No. 7,035,279 |
| U.S. Patent No. 7,596,088 |
| U.S. Patent No. 8,014,394 |

B.    A permanent injunction restraining and enjoining Defendant, its officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, joint ventures, other related business entities and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from infringing the Asserted Patents;

C.    An award of damages to Plaintiff arising from Defendant's past and continuing infringement up until the date Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

D.    A determination that Defendant's infringement of the Asserted Patents has been willful, and an award of treble damages to Plaintiff pursuant to 35 U.S.C. § 284;

E.    A determination that this is an exceptional case and awarding Plaintiff's attorneys' fees pursuant to 35 U.S.C. § 285;

F.    An order awarding Plaintiff costs and expenses in this action;

G.    An order awarding Plaintiff pre- and post-judgment interest on its damages; and

H.    An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.


Dated: September 26, 2023                    Respectfully submitted,


                                             By: */s/ James R. Nuttall by permission Charles
                                             Everingham IV*
                                             James R. Nuttall (IL 6243585) *PHV pending*
                                             LEAD ATTORNEY
                                             Katherine H. Tellez (IL 6303475) *PHV pending*
                                             Robert F. Kappers (IL 6313187) *PHV pending*
                                             Daniel F. Gelwicks (IL 6320663) *PHV pending*
                                             STEPTOE & JOHNSON LLP
                                             227 West Monroe Street, Suite 4700
                                             Chicago, IL 60606
                                             (312) 577-1300
                                             E-mail: jnuttall@steptoe.com
                                             E-Mail: ktellez@steptoe.com
                                             E-mail: rkappers@steptoe.com
                                             E-mail: dgelwicks@steptoe.com

                                             Thomas C. Yebernetsky (DC 219497) *PHV pending*
                                             Christopher Suarez (IL 6307113) *PHV pending*
                                             STEPTOE & JOHNSON LLP
                                             1330 Connecticut Avenue, NW

Washington, DC 20036
(202) 429-8003
E-mail: tyebernetsky@steptoe.com
E-mail: csuarez@steptoe.com

Michael C. Miller (NY 2066256) *PHV pending*
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
E-mail: mmiller@steptoe.com

Of Counsel:
WARD SMITH & HILL, PLLC
Charles Everingham IV
Texas Bar No. 00787447
ce@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
claire@wsfirm.com
1507 Bill Owens Pkwy
Longview, Texas 75604
Phone: (903) 757-6400
Fax: (903) 757-2323

*Attorneys for Plaintiff*
*Portsmouth Network Corporation*